### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEANETTA WILLIAMS,<br>as independent administrator for the<br>Estate of Dontrell Taquon Mundine-<br>Williams,<br><br>                  Plaintiff,<br><br>vs.<br><br>STATE OF ILLINOIS,<br>ILLINOIS DEPARTMENT OF<br>CORRECTIONS,<br>JOHN R. BALDWIN, and<br>WEXFORD HEALTH SOURCES, INC.<br><br>                 Defendants. | )<br>)<br>)<br>)<br>)   **Case No. 3:19-CV-739-MAB**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Jeanetta Williams brought this suit against the State of Illinois, the Illinois Department of Corrections ("the IDOC"), John Baldwin, and Wexford Health Sources, Inc. ("Wexford") in her capacity as independent administrator for the estate of her son, Dontrell Taquon Mundine-Williams, who committed suicide on December 1, 2017 while incarcerated at Lawrence Correctional Center (Doc. 52). Williams alleges that Defendants' failure to provide her son with adequate medical and mental health care caused his death (Doc. 52). The three-count First Amended Complaint filed on October 28, 2019 (Doc. 52) is the operative complaint.

This matter is currently before the Court on the amended motion to dismiss (Doc. 74) and the motion to stay discovery (Doc. 81) filed by Defendants State of Illinois, the

IDOC, and John Baldwin (Doc. 74). For the reasons explained below, the motion to dismiss is granted in part and denied in part, and the motion to stay discovery is denied as moot.

## FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT

Dontrell Taquon Mundine-Williams was incarcerated in May 2017 in the IDOC at Stateville Correctional Center on a parole violation. On July 28, 2017, he was transferred from Stateville to Lawrence Correctional Center. He was projected to be released in February 2018. However, he committed suicide on December 1, 2017.

The complaint alleges that Dontrell had a history of mental health issues and suicide attempts, which Defendants were aware of. While he was incarcerated between May and December 2017, Dontrell received medical and mental health treatment for his frequent seizures, depression, and bi-polar disorder. Dontrell had a history of at least four suicide attempts prior to his incarceration in May 2017 and three more while he was incarcerated—twice by using a staple to cut his wrists and once by drinking bleach. Dontrell repeatedly requested help and to speak with mental health professionals. Prison staff found him fashioning a noose out of his sheets on a number of occasions. He was placed on crisis watch at least six times.

Prior to December 1, 2017, which is the day Dontrell died, he learned he "was facing an extension of his time due to a rule violation" (Doc. 52, p. 5). On December 1st, he was not on crisis watch but in "a unit of lower level supervision and care and in segregation" (Doc. 52, p. 6). That day he flooded the toilet in his cell. At some point thereafter, he hung himself with a bedsheet.

The complaint alleges that Defendants are liable because, amongst other things, they did not keep Dontrell on crisis watch, failed to otherwise monitor Dontrell, failed to house him in a hospital or mental ward, failed to refer him for a mental health evaluation, and failed to provide him with appropriate mental health care.

## Motion to Dismiss

The State of Illinois, the IDOC, and John Baldwin filed a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted (Doc. 74). Defendants first stated that it is unclear what specific claims Plaintiff is bringing in the First Amended Complaint, but they surmised that Counts 1 and 3 were aimed at them (Doc. 74). They further stated that it appears all three Counts are based on Illinois state law, but to the extent Plaintiff brings constitutional claims pursuant to 42 U.S.C. § 1983, they should be dismissed as to the State of Illinois and the IDOC because neither is a person within the meaning of § 1983 (Doc. 74). Defendants further argued that Plaintiff's claims against the State of Illinois and the IDOC are barred by state law sovereign immunity, as well as, the Eleventh Amendment (Doc. 74). Finally, Defendants argued that Plaintiff's claims against John Baldwin should be dismissed Plaintiff did not allege facts demonstrating Baldwin's personal involvement and because the claims are also barred by state sovereign immunity (Doc. 74).

Plaintiff filed a response in opposition to the motion to dismiss (Doc. 76), to which Defendants filed a reply (Doc. 78).

## Discussion

The Court agrees with Defendants that it is difficult to discern from the face of the

complaint what claims Plaintiff is asserting. The First Amended Complaint is divided into three Counts (*see* Doc. 52). Typically, a "count" identifies a specific statute or legal theory under which a particular defendant is purportedly liable and the plaintiff is entitled to damages. *N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992); *Zurbriggen v. Twin Hill Acquisition Co., Inc.*, 338 F. Supp. 3d 875, 882 (N.D. Ill. 2018). And each legal theory that the plaintiff is pursuing is put in a separate count. *N.A.A.C.P.*, 978 F.2d at 292; *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). But, here, none of the three Counts in the First Amended Complaint are titled (*see* Doc. 52). The allegations contained in each Count are largely, and often entirely, duplicative of one another (*see id.*). And each Count contains references or citations to numerous legal theories (*see id.*). For example, each Count contains language relevant to an Eighth Amendment claim ("utter indifference" and "conscious disregard"), as well as, a negligence claim ("duty of care") (*e.g.*, Doc. 52, pp. 6–8, ¶¶28, 31). Each Count also cites to the Illinois Wrongful Death Act and the Illinois Survival Act (*e.g., id.*   at p. 8, ¶¶35, 36). 37, 38). And each Count cites to the Illinois statute for medical malpractice—735 Ill. Comp. Stat. 5/2-622—and references the attorney affidavit and certificate of merit attached to the complaint that are required under § 5/2-622 to maintain a medical malpractice claim (*e.g.*, Doc. 52, p. 8, ¶¶ 37, 38).

Additionally, the Counts fail to identify which Defendant(s) they are directed at (*see* Doc. 52). The allegations and prayer for relief in Count 1 appear to be directed at the State of Illinois, the IDOC, and John Baldwin (*see* Doc. 52, pp. 2–8). In fact, Wexford is not mentioned in Count 1 (*see id.*). The allegations and prayers for relief in Counts 2 and 3

appear to be primarily directed at Wexford, although the State of Illinois, the IDOC, and Baldwin are also mentioned in Counts 2 and 3 (Doc. 52, pp. 9–22).

That being said, the practice of pleading in counts, each identifying a specific statute or legal rule that was purportedly violated, is not required by the Federal Rules of Civil Procedure, although it is a common (and often very helpful) practice. *Bartholet,* 953 F.2d at 1078. *See also N.A.A.C.P.,* 978 F.2d at 292 ("Identifying legal theories may assist defendants and the court in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of 'claim for relief' in the federal rules."). It is well-established that a complaint need not plead the legal theories that purportedly give rise to liability and damages. *ACF 2006 Corp. v. Mark C. Ladendorf, Attorney at Law, P.C.*, 826 F.3d 976, 981 (7th Cir. 2016) ("[C]omplaints need not cite authority or set out a line of legal argument."); *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011)("A complaint need not identify legal theories, and specifying an incorrect legal theory is not a fatal error."); *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010) ("Although *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), require that a complaint in federal court allege facts sufficient to show that the case is plausible . . . they do not undermine the principle that plaintiffs in federal courts are not required to plead legal theories."); *N.A.A.C.P.*, 978 F.2d at 292 ("[A complaint] need not identify the law on which the claim rests, and different legal theories therefore do not multiply the number of claims for relief. One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate.").

Rather, a complaint must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A "claim for relief" is a "grievance"—a statement of events or a general set of facts that entitle the plaintiff to damages. *Johnson*, 574 U.S. at 12; *ACF 2006 Corp.*, 826 F.3d at 981; *Rapid Test Prod., Inc. v. Durham Sch. Servs., Inc.*, 460 F.3d 859, 861 (7th Cir. 2006). *See also N.A.A.C.P.*, 978 F.2d at 292 ("A complaint should limn the grievance and demand relief.").

Here, the complaint is premised on one core grievance: Defendants were well aware of Dontrell's medical and mental health problems but failed to provide him with adequate medical and mental health care due to systemic deficiencies within the IDOC, which led to Dontrell committing suicide (Doc. 52; Doc. 76). The motion to dismiss should be granted only if facts in the First Amended Complaint, taken as true, do not plausibly entitle Plaintiff to relief under *any* "recognized legal theory," even one not expressly identified in the complaint. *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 996 (N.D. Ill. 2013) (citing *Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012)); *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (reversing summary judgment that was entered against plaintiffs for failure to invoke 42. U.S.C. § 1983, explaining "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim."); *Jajeh v. County of Cook,* 678 F.3d 560, 567 (7th Cir. 2012) (holding plaintiff pleaded a hostile work environment claim even though complaint never used that term). *See also Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) ("[C]ourts are supposed to analyze a litigant's claims and not just the legal theories that he propounds . . . .")

In her response to the motion to dismiss, Plaintiff states that she brought "claims"

against the Defendants under the Americans with Disabilities Act, the Rehabilitation Act, the Illinois Wrongful Death Statute, the Illinois Survival Act, and the Eighth and Fourteenth Amendments for the deprivation of adequate medical and mental health care (Doc. 76, p. 2). The Court will thus analyze whether the facts alleged in the First Amended Complaint, taken as true, plausibly entitle Plaintiff to relief under any of the asserted legal theories.

## A. ADA/Rehabilitation Act

Plaintiff asserts that she alleged a "claim" under the Americans with Disabilities Act and the Rehabilitation Act (Doc. 76), however, neither statute is mentioned by name or citation anywhere in the First Amended Complaint (*see* Doc. 52). As best the Court can tell, the word "disabled" or "disability" never appears in the First Amended Complaint either (*see* Doc. 52). But, as explained above, those omissions are not fatal so long as the complaint alleged facts sufficient to entitle Plaintiff to relief under these statutes.

A claim under either Title II of the ADA or the Rehabilitation Act requires the plaintiff to prove that he suffers from a disability as defined in the statutes; that he was denied the benefits of the services, programs, or activities of a public entity, or otherwise subjected to discrimination by such an entity; and that the denial or discrimination was by reason of his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (internal quotations and citations omitted); 42 U.S.C. § 12132. The Rehabilitation Act also requires the plaintiff to show that the program in which he was involved received federal financial assistance. *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015); 29 U.S.C. § 794(a).

Plaintiff argues that she has sufficiently alleged a claim for relief under the ADA and the Rehabilitation Act because the complaint states that Dontrell had bipolar disorder and history of suicide attempts but Defendants transferred him out of the crisis unit and placed him in segregation, did not give him a cellmate, did not house him in a hospital or medical ward, and "failed to ensure [he] received care for his condition" (Doc. 76, pp. 10, 11). But these facts do not explain how Dontrell was purportedly discriminated against, nor can it be inferred from the facts. For one thing, the complaint does not allege that Dontrell was denied health care altogether. Rather, the complaint admits that he received "medical and mental healthcare treatment for his frequent seizures, depression and bi-polar disorder" while incarcerated (Doc. 52, p. 4), but implies that treatment was woefully inadequate and incompetent (*see* Doc. 52). Importantly, however, the ADA is not violated "by a prison's simply failing to attend to the medical needs of its disabled prisoners. . . . The ADA does not create a remedy for medical malpractice." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). *Accord Resel v. Fox*, No. 01–1599, 26 Fed. Appx. 572, 577 (7th Cir.2001) (holding that "a prison official does not violate the ADA when failing to attend to the medical needs of . . . disabled prisoners.") (internal quotation marks and citation omitted).

For another thing, the complaint does not allege, nor can it be inferred, that Dontrell was sent to segregation because of his mental illness or for reasons related to is mental illness (*see* Doc. 52). It also does not allege that Dontrell was denied access to any other services, programs, or activities because of his mental illness or because he was in segregation. And it does not allege that he was treated differently than or denied services

that other prisoners received.

These omissions distinguish Plaintiff's complaint from the cases she attempted to rely on (Doc. 76, pp. 10–12). Specifically, in *Andrews v. Rauner*, inmate Tiffany Rusher had a history of self-harm and was diagnosed with bipolar-type schizoaffective disorder, a borderline personality disorder, and post-traumatic stress disorder. *Andrews v. Rauner*, No. 3:18-CV-1101, 2018 WL 3748401, at *2 (C.D. Ill. Aug. 6, 2018). She was provided with therapy and group activities to address her mental illness, and the medical staff noted the importance of "out of cell time" to engage in activities like socializing and writing. *Id.* At the same time, however, she was repeatedly placed in solitary confinement every time she tried to harm herself, and the isolation "undermined the limited mental health care she had been receiving." *Id.* After another suicide attempt, Rusher was placed on "constant watch" in a "crisis cell," where all of her personal property was taken away and she was monitored 24-hours a day by a guard stationed outside her cell. *Id.* Medical staff determined that Rusher's mental condition was so acute and dangerous that she required full inpatient level mental health care. *Id.* But instead of providing her with that care, she was kept in isolation. *Id.*

The defendants moved to dismiss the ADA/Rehabilitation Act claims but the court found that the complaint alleged facts sufficient to sustain a claim under the ADA and the Rehabilitation Act. *Andrews.* 2018 WL 3748401, at *5. Specifically, the complaint alleged that the defendants failed to reasonably accommodate Rusher's disability by keeping her isolated instead of providing her access to inpatient intensive psychiatric treatment at an outside facility, although prisoners with physical injuries or illnesses were

taken to outside facilities for medical care. *Id.* The complaint also alleged that the Defendants placed Rusher in solitary confinement *because of* her mental disability, which precluded her from accessing a long list of activities, programs, and services, including education, programming, recreation, exercise, and mental health treatment and services. *Id.*

In *Gay v. State of Illinois*, *et al.*, CDIL case no. 19-cv-1133-HAB-EIL, the defendants' motion to dismiss the plaintiff's ADA and Rehabilitation Act claims was likewise dismissed because the complaint contained the exact same type of allegations as the complaint in *Andrews*. *Id.* at Doc. 44 (Sept. 16, 2019). *See also Corbin v. Indiana*, No. 3:16-CV-602-PPS/MGG, 2018 WL 1920711, at *4 (N.D. Ind. Apr. 23, 2018) (denying motion to dismiss where it was plausible to infer the plaintiff was placed in segregated housing because of his disability, and that as a result of segregation, he was denied access to mental health services and care, and complaint also alleged that the state's conduct was "intentional, willful, and wanton"). *But see Estate of Crandall v. Godinez*, No. 14-CV-1401, 2015 WL 1539017, at *7 (C.D. Ill. Mar. 31, 2015) (dismissing ADA and Rehabilitation Act claims where the complaint did not allege inmate was placed in segregation because of his disability or that he was denied access to prison services in segregation, but instead alleged he did not receive appropriate and effective mental health care).

Consequently, the Court concludes that Plaintiff has failed to allege a claim under the ADA or the Rehabilitation Act. But Plaintiff will be given a chance to amend her complaint. In the event she reasserts a claim under the ADA and/or the Rehabilitation Act, the proper defendant is the IDOC, or its director in his official capacity. *Jaros v. Ill.*

*Dep't of Corrections*, 684 F.3d 667, 670, n.2 (7th Cir. 2012).

**B. Constitutional Claims under 42 U.S.C. § 1983**

According to Plaintiff, she asserted claims against the State of Illinois, the IDOC, and John Baldwin under the Eighth and Fourteenth Amendments for the deprivation of adequate medical and mental health care (Doc. 76). These claims are barred against the State of Illinois and the IDOC because "a state and its agencies are not suable 'persons' within the meaning of section 1983." *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012). Such claims are only proper against individual state actors. *Id.* Consequently, the motion to dismiss is granted with respect to Plaintiff's constitutional claims against the State of Illinois and the IDOC.

As for Defendant Baldwin, he argues that Plaintiff has not pleaded facts alleging his personal involvement in the purported constitutional violations (Doc. 74, 75). The Court disagrees. "For a defendant to be liable under § 1983, he or she must have participated directly in the constitutional violation." *See Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). A supervisor satisfies the personal responsibility requirement of § 1983 if he "know[s] about the conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye." *Id.* (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Here, the crux of the complaint is that there was a systemic failure within the IDOC to provide prisoners with constitutionally adequate medical and mental health care, which Defendants, including Baldwin, knew about but failed to remedy. Because of that failure, Dontrell did not receive appropriate care, his psychological health did not improve (and perhaps worsened), and he continued his self-harming behavior until he

succeeded in killing himself in December 2017. Because Plaintiff has alleged a systemic deficiency in providing medical and mental health care to inmates, it can be inferred that Baldwin bears some responsibility for the alleged constitutional violation given his position as Director of the IDOC. *See Smith v. Dart*, 803 F.3d 304, 310 (7th Cir. 2015) ("[T]he personal involvement of senior jail officials . . . can be inferred at the motion to dismiss stage, where, as here, the plaintiff alleges 'potentially systemic,' as opposed to 'clearly localized,' constitutional violations.") (quoting *Antonelli v. Sheahan,* 81 F.3d 1422, 1428–29 (7th Cir. 1996)). Consequently, Plaintiff will be allowed to proceed on his constitutional claims against Defendant John Baldwin, and the motion to dismiss is denied in this regard.

## C.  State Law Claims

According to Plaintiff, she asserted claims against the State of Illinois, the IDOC, and John Baldwin under the Illinois Wrongful Death Statute and the Illinois Survival Act (Doc. 76). However, Plaintiff is barred from bringing these claims in federal court against the State of Illinois and the IDOC by both federal and state sovereign immunity. *Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016), *aff'd,* 138 S. Ct. 784 (2018). Consequently, the motion to dismiss is granted with respect to Plaintiff's state law claims against the State of Illinois and the IDOC.

State sovereign immunity will also bar the claim against Baldwin if he was nominally named as a defendant and "the real claim is against the State of Illinois itself and . . . the State of Illinois is the party vitally interested." *Murphy*, 844 F.3d at 658 (quoting *Sass v. Kramer*, 381 N.E.2d 975, 977 (Ill. 1978)).

> A claim against a state official or employee is a claim against the state when "there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State."

*Murphy*, 844 F.3d at 658 (citations omitted). An exception to state sovereign immunity exists in suits where the plaintiff alleges that state officials or employees violated "statutory or constitutional law." *Id.* at 659 (citation omitted). In such cases "sovereign immunity affords no protection" because illegal acts performed by state officials or employees are not regarded as acts of the state itself. *Id.* (citation omitted). *See also Turpin v. Koropchak*, 567 F.3d 880, 884 (7th Cir. 2009) ("The officer suit exception provides that when an officer of the State commits an unconstitutional act or violates a statute, the suit is not against the State, because the State is presumed not to violate its own constitution or enactments.")

Here, Plaintiff alleges that Baldwin's conduct violated Dontrell's constitutional rights and therefore state sovereign immunity does not bar Plaintiff's state law claims based on that same conduct. *Bentz v. Ghosh*, 718 Fed.Appx. 413, 419 (7th Cir. 2017) (holding state sovereign immunity did not bar state law claim for negligence where the plaintiff alleged the defendants' conduct also constituted deliberate indifference in violation of the Eighth Amendment); *Murphy*, 844 F.3d at 660 (holding state sovereign immunity did not bar state law claim for battery where the plaintiff also alleged and proved the defendants' conduct violated the Eighth Amendment prohibition on excessive force); *Whitlock v. Brueggemann*, 682 F.3d 567, 590 (7th Cir. 2012) (holding state sovereign

immunity did not bar state law claims against Illinois State Police defendants where the plaintiff also alleged that the ISP defendants violated his constitutional rights). Consequently, Plaintiff will be allowed to proceed on his state law claims against Defendant John Baldwin, and the motion to dismiss is denied in this regard.

### MOTION TO STAY DISCOVERY

Defendants State of Illinois, the IDOC, and John Baldwin filed a motion on March 19, 2020 asking the Court to stay discovery pending the resolution of the motion to dismiss (Doc. 81). Plaintiff did not file a response or otherwise object to the motion to stay. The Court inadvertently overlooked this motion due to the significant disruptions caused by the onset of the COVID-19 pandemic and the Court's transition to a telework schedule and apologizes for not issuing a ruling sooner. At this point, it does not make much sense to stay discovery. In the event the parties have been operating as though the stay were in place, the Court is amenable to extending the necessary interim discovery deadlines (*e.g.*, the deadline for Plaintiff's deposition and the deadline for Defendants', and perhaps the overall discovery deadline, as well). The parties may submit a motion to amend the schedule, along with a joint proposed amended schedule.

### CONCLUSION

The amended motion to dismiss (Doc. 74) is **GRANTED in part and DENIED in part.** The motion is granted as to Plaintiff's claims under the ADA and the Rehabilitation Act. Those claims are **DISMISSED with prejudice** as to the State of Illinois and John Baldwin and **DISMISSED without prejudice** as to the Illinois Department of

Corrections. Plaintiff is **GRANTED** leave to amend her complaint on or before August 24, 2020 to reassert these claims against the Illinois Department of Corrections. If Plaintiff declines or fails to amend her complaint by the deadline, the dismissal of the Illinois Department of Corrections will be converted to a dismissal *with prejudice*.

The motion to dismiss is also **GRANTED** as to Plaintiff's constitutional claims and state law claims against the State of Illinois and the Illinois Department of Corrections; those claims are **DISMISSED with prejudice.** The State of Illinois and the Illinois Department of Corrections are **DISMISSED** as Defendants to this lawsuit. The motion to dismiss is **DENIED** as to Plaintiff's constitutional claims and state law claims against John Baldwin, and this matter will proceed on those claims.

The motion to stay discovery (Doc. 81) is **DENIED** as moot.

**IT IS SO ORDERED.**

**DATED: July 22, 2020**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**