IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JEANETTA WILLIAMS,** as independent administrator for the Estate of Dontrell Taquon Mundine-Williams, <br><br>                    **Plaintiff,** <br><br> vs. <br><br> **ILLINOIS DEPARTMENT OF CORRECTIONS,** **JOHN R. BALDWIN, and** **WEXFORD HEALTH SOURCES, INC.** <br><br>                    **Defendants.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   **Case No. 3:19-CV-739-MAB** |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Jeanetta Williams brings this suit against the Illinois Department of Corrections ("the IDOC"), John Baldwin, and Wexford Health Sources, Inc. ("Wexford") in her capacity as independent administrator for the estate of her son, Dontrell Taquon Mundine-Williams, who committed suicide on December 1, 2017 while incarcerated at Lawrence Correctional Center (Doc. 95). Ms. Williams alleges, in short, that Defendants' failure to provide her son with adequate medical and mental health care caused his death (Doc. 95).

The Court previously granted in part Defendants' motion to dismiss and gave Plaintiff leave to amend the claims she brought pursuant to the Americans with Disabilities Act and the Rehabilitation Act (Doc. 85). Plaintiff's second amended

complaint delineates the following seven counts (Doc. 95):

> Count 1 –deliberate indifference claim under the 8th and 14th Amendments against John Baldwin;
>
> Count 2 – claim for violations of the Americans with Disabilities Act against the IDOC;
>
> Count 3 – claim for violations of the Rehabilitation Act against the IDOC;
>
> Count 4 – wrongful death claim pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, based on negligence, against John Baldwin;
>
> Count 5 - wrongful death claim pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, based on negligence, against Wexford;
>
> Count 6 - wrongful death claim pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, based on willful and wanton conduct, against John Baldwin; and
>
> Count 7 - wrongful death claim pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, based on willful and wanton conduct against Wexford.

The second amended complaint is now the subject of a second round of motions to dismiss (Docs. 98, 101).

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) addresses the legal sufficiency of the plaintiff's claim for relief, not the merits of the case or whether the plaintiff will ultimately prevail. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss, the court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *E.g., Burger v. Cty. of Macon*, 942 F.3d 372, 374 (7th Cir. 2019) (citation omitted). The complaint must contain sufficient factual information "to state a claim to

relief that is plausible on its face,'" meaning the court can reasonably infer that the defendant is liable for the alleged misconduct. *Burger*, 942 F.3d at 374 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Camasta*, 761 F.3d at 736 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

### **WEXFORD'S MOTION TO DISMISS** (Doc. 98)

Wexford takes aim at Count 7 which is a wrongful death claim brought under the Illinois Survival Act based on willful and wanton conduct. It does not expressly contain a prayer for relief seeking punitive damages (*see* Doc. 95), but Wexford argued it is implied given that the claim is identical to Count 5, except that it is captioned "Willful and Wanton," while Count 5 is captioned "Negligence." (Doc. 98). According to Wexford, Count 7 can therefore only be an attempt at seeking punitive damages (Doc. 98). Wexford argued that the Illinois Survival Act does not allow for the recovery of punitive damages, and consequently Count 7 should be dismissed (Doc. 98).

In response, Plaintiff asserted that she is not seeking punitive damages from Wexford because the Illinois Survival Act does not allow for such damages (Doc. 104). Rather, she has simply stated separate counts against Wexford for negligence and willful and wanton conduct. There is no argument from Wexford that pleading negligence and willful and wanton conduct as separate counts is inappropriate or prohibited (*see* Docs. 98, 106). Consequently, these counts will stand as is.

Wexford also argued, in the alternative, that Count 7 should be dismissed because Plaintiff did not seek, and was not granted, leave to amend her claim against Wexford to allege willful and wanton conduct (Doc. 98). In response, Plaintiff asserts that the willful

and wanton allegations against Wexford in Count 7 are not new; they were also in the original complaint and First Amended Complaint (Doc. 104). Plaintiff states the allegations just look different now because she reorganized the Second Amended Complaint to conform with the guidance provided by the Court (Doc. 104; *see also* Doc. 85).

The Court agrees with Plaintiff that her allegations of willful and wanton conduct by Wexford are not new. Plaintiff alleged in Count 2 of the previous complaints that Wexford committed acts of "utter indifference and/or conscious disregard" (Doc. 1, p. 11; Doc. 52, p. 14).[1] And under Illinois law, "utter indifference" and "conscious disregard" are synonymous with "willful and wanton." *See, e.g.*, Illinois Pattern Jury Instruction – Civil – 14.01 ("When I use the expression 'willful and wanton conduct' I mean a course of action which . . . shows an utter indifference to or conscious disregard for (a person's own safety) . . . ."). Additionally, the Court has no issue with Plaintiff restructuring her existing allegations into separate and additional counts in order to make her complaint clearer and easier to read.

Finally, Wexford argued in its reply brief that Counts 5 and 7 should be dismissed because they are each insufficiently pled (Doc. 106). Specifically, Wexford claims that Plaintiff failed to sufficiently plead proximate cause for either claim and that the allegations in Count VII do not rise to the level of willful and wanton conduct (Doc. 106).

---

[1] Compare with Count 2, in which Plaintiff alleged Wexford committed acts of "negligence" (Doc 1, p. 17; Doc. 52, p. 20).

The Court declines to consider this argument because it was raised for the first time in the reply brief. *E.g., O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020) ("[W]e have repeatedly recognized that district courts are entitled to treat an argument raised for the first time in a reply brief as waived.") (citations omitted); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find an argument raised for the first time in a reply brief is forfeited."). *See also H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 636 (7th Cir. 2020) ("[T]he reply brief is an opportunity to reply, not to say what should have been said in the opening brief.") (citing *Parrillo v. Commercial Union Ins. Co.*, 85 F.3d 1245, 1250 (7th Cir. 1996)); *Judge v. Quinn*, 612 F.3d 537, 542 (7th Cir. 2010) ("The district court [is] under no obligation to entertain" arguments raised for the first time in a reply brief). Furthermore, as explained below with respect to the IDOC Defendants' motion to dismiss, Plaintiff has alleged facts sufficient to establish proximate cause.

Accordingly, Wexford's motion to dismiss (Doc. 98) is denied.

### IDOC AND JOHN BALDWIN'S MOTION TO DISMISS (Doc. 101)

Counts 4 and 6 are wrongful death claims brought under the Illinois Survival Act against John Baldwin, based on his negligence and willful and wanton conduct, respectively. Defendant Baldwin first argues that Counts 4 and 6 should be dismissed because Plaintiff cannot maintain wrongful death claims sounding in negligence because suicide is an independent intervening act that cuts off proximate cause (Doc. 102, pp. 3–4).

"In wrongful death cases involving suicide, the general rule is that the injured party's voluntary act of suicide is an independent intervening act, which is unforeseeable

as a matter of law and breaks the causal link between any alleged negligent conduct and the injury." *Stanphill v. Ortberg*, 129 N.E.3d 1167, 1177 (Ill. 2018) (citing *Turcios v. DeBruler Co.*, 32 N.E.3d 1117, 1123 (Ill. 2015)). The general rule does not apply, however, when the plaintiff can show that the suicide was a reasonably foreseeable result of the defendant's conduct. *Stanphill*, 129 N.E.3d at 1177. As the Seventh Circuit explained,

> [T]he doctrine of supervening cause is not applicable when the duty of care claimed to have been violated is precisely a duty to protect against ordinarily unforeseeable conduct. A risk unforeseeable to an ordinary person is foreseeable to a specialist who assumes a duty to prevent the risk from materializing. The duty is a recognition that the unforeseeable has become foreseeable to the relevant community.

*Jutzi-Johnson v. United States*, 263 F.3d 753, 756 (7th Cir. 2001). For this reason, "a hospital that fails to maintain a careful watch over patients known to be suicidal is not excused by the doctrine of supervening cause from liability for a suicide." *Id. See also Winger v. Franciscan Medical Center,* 701 N.E.2d 813, 820 (Ill. App. Ct. 1998) (decedent's suicide would not bar wrongful death action based on psychiatric malpractice in failing to supervise decedent with known suicidal tendencies). Likewise, prison officials who know about an inmate's suicidal tendencies but fail to act reasonably to prevent his self-destructive behaviors are not excused from liability. *See Corbier v. Watson*, No. 16-CV-257-SMY-MAB, 2019 WL 351498, at *10 (S.D. Ill. Jan. 29, 2019) (inmate's suicide did not bar wrongful death action against jail officials). *See also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 665 (7th Cir. 2012) ("[P]rison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies.").

Baldwin makes the bald assertion that the "seventeen subsections" of his alleged negligent and/or willful and wanton actions "do not meet the extreme standard required to maintain a wrongful death suit" (Doc. 102, p. 4). Baldwin does not provide any further explanation (*see id.*). The Court thinks Plaintiff has pled facts—namely, Dontrell's diagnosis and treatment for psychiatric disorders, suicide attempts prior to and during his incarceration, and his repeated placement on suicide watch—that are sufficient to establish Dontrell's suicide was a foreseeable result of Defendants' failure to act.

Defendant Baldwin next argues that Count 6 for willful and wanton conduct should be dismissed because the Illinois Survival Act does not permit recovery of punitive damages (Doc. 102, pp. 4–6). This argument is rejected for the same reasons stated above with respect to Wexford. *Supra*, pp. 3-5.

Defendant Baldwin's final argument is that although Plaintiff was given leave to amend her claims under the ADA and the Rehabilitation Act, she has still failed to allege facts sufficient to state a claim upon which relief may be granted (Doc. 102, pp. 6–8). The Court disagrees. Plaintiff has amended her allegations to sufficiently cure the deficiencies previously identified by the Court (Doc. 85). Specifically, Plaintiff now alleges that Dontrell was so seriously mentally ill that the prison did not have the ability to provide him with proper mental health treatment, but still did not make arrangements for him to receive care at an outside hospital or other facility, even though such arrangements are routinely made for inmates with physical injuries or illness (Doc. 95). Plaintiff also alleged that Dontrell was placed in segregation due to rule violations caused by his mental illness and suicidal tendencies (Doc. 95). For example, he received citations for damage and

misuse of property after instances where he tried to commit suicide by drinking bleach, using staples to cut his wrists, and tearing his sheets to make nooses (Doc. 95). Plaintiff further alleged that by being placed in segregation or isolation, Dontrell was denied access to services, programs, and activities, including education, programming, recreation, exercise, human interaction, and mental health treatment and services (Doc. 95). With the addition of these new allegations, Plaintiff has sufficiently alleged that Dontrell was discriminated against, or otherwise denied access to services, programs, or activities, due to his disability. Plaintiff has thus adequately stated a claim under the ADA and the Rehabilitation Act.

## CONCLUSION

The motions to dismiss filed by Defendant Wexford Health Sources, Inc. (Doc. 98) and the IDOC and John Baldwin (Doc. 101) are **DENIED**.

**IT IS SO ORDERED.**

**DATED: April 12, 2021**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**